UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JASMINE M., <br><br> Plaintiff, <br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | CASE NO. 3:25-CV-5226-DWC <br><br> ORDER RE: SOCIAL SECURITY DISABILITY APPEAL |

Plaintiff filed this action, pursuant to 42 U.S.C. § 405(g), for judicial review of the denial of her application for Disability Insurance Benefits (DIB). Pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, and Local Rule MJR 13, the parties have consented to proceed before the undersigned. After considering the record, the Court concludes that this matter must be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Order.

//

//

ORDER RE: SOCIAL SECURITY DISABILITY APPEAL - 1

## I.   BACKGROUND

Plaintiff applied for DIB on December 3, 2021. Administrative Record (AR) 22. Her alleged date of disability onset is October 26, 2021. *Id.* Her requested hearing was held before an Administrative Law Judge (ALJ) on June 27, 2023. AR 36–83. On December 5, 2023, the ALJ issued a written decision finding Plaintiff not disabled. AR 19–35. The Appeals Council declined Plaintiff's timely request for review, making the ALJ's decision the final agency action subject to judicial review. AR 6–11. On March 19, 2025, Plaintiff filed a Complaint in this Court seeking judicial review of the ALJ's decision. Dkt. 3.

## II.   STANDARD

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of benefits if, and only if, the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

## III.   DISCUSSION

In her opening brief, Plaintiff argues the ALJ erred in rejecting her claim at step two of the sequential evaluation process and in failing to adequately develop the record. Dkt. 9.

**A.    Step Two**

At step two of the sequential evaluation process, the ALJ found Plaintiff had several medically determinable impairments (MDIs), including cervical spine degenerative disc disease, cervical spine degenerative joint disease, scoliosis, and status post motor vehicle accident. AR 24. The ALJ found Plaintiff's MDIs non-severe (AR 25–29), and Plaintiff challenges that finding with respect to her cervical spine-related impairments (*see* Dkt. 9 at 7–10).[1]

---

[1] The ALJ also found Plaintiff had the following other MDIs: sarcoidosis, uveitis, pregnancy, persistent depressive disorder, and tinnitus. *See* AR 24–29. Plaintiff has not challenged the ALJ's finding that these impairments were

ORDER RE: SOCIAL SECURITY DISABILITY
APPEAL - 2

1   "[A]n ALJ may find an impairment or combination of impairments 'not severe' at step

2   two '*only if* the evidence establishes a slight abnormality that has no more than a minimal effect

3   on an individual's ability to work.'" *Glanden v. Kijakazi*, 86 F.4th 838, 844 (9th Cir. 2023)

4   (quoting *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005)) (emphasis in original). The Court

5   "must determine whether the ALJ had substantial evidence to find that the medical evidence

6   clearly established that [Plaintiff] did not have a medically severe impairment or combination of

7   impairments." *Webb*, 433 F.3d at 687.

8         The ALJ summarized the medical evidence of record. *See* AR 26–27. As the ALJ

9   described it, examinations and x-rays revealed many normal results, but some abnormalities were

10  still present. *See* AR 26–27. Following a motor vehicle accident in 2021, x-rays revealed

11  impaired curvature of the spine, along with lordosis and mild levoscoliosis of the cervical spine.

12  AR 26 (citing AR 646–47). Plaintiff continued to complain of back and neck pain into 2023. AR

13  27. An MRI in May 2023 revealed type 1 Modic changes[2] in her cervical spine and moderate

14  bilateral foraminal stenosis. *Id.* (citing AR 2959).

15        This is not "substantial evidence to find that the medical evidence clearly established that

16  [Plaintiff] did not have a" severe cervical spine-related impairment. *See Webb*, 433 F.3d at 687.

17  True, the evidence does not suggest a particular level of pain or impairment. But the evidence

18  also does not suggest a lack of pain or impairment. "If an ALJ 'is unable to determine clearly the

19

20  either non-severe or did not meet the duration requirement. *See* Dkt. 9 at 7–10. The ALJ did not specify which impairments failed the duration requirement and which were non-severe. With respect to Plaintiff's cervical spine-

21  related impairments, the Court assumes the ALJ did not find they failed the duration requirement, as Defendant does not argue so and nothing in the ALJ's decision suggests as much. *See* AR 26–27; Dkt. 11.

22  [2] "Modic changes represent MRI observations of vertebral marrow and endplate changes. These changes have been linked to trauma, disc disruption and degeneration. . . . Type 1 Modic changes show bony edema and inflammation

23  and are strongly associated with back pain." *Elledge v. Saul*, No. 5:19-cv-00176, 2020 WL 406908 at *7 (N.D. Ala. Jan. 24, 2020) (quoting Am. Chiropractic Ass'n, *Bone Morphology and Modic Classifications* (last visited Dec. 31,

24  2019) (URL omitted)).

ORDER RE: SOCIAL SECURITY DISABILITY
APPEAL - 3

effect of an impairment . . . on the individual's ability to do basic work activities, the sequential evaluation should not end with the not severe evaluation step.'" *Glanden*, 86 F.4th at 844 (quoting SSR 85-28).

The ALJ also noted evidence that Plaintiff's pain improved after her accident and after engaging in some physical therapy (*see* AR 26–27,) but this is not substantial evidence showing Plaintiff's pain imposed only a minimal effect on her work-related abilities. *See Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001) ("[S]ome improvement does not mean that the person's impairments no longer seriously affect her ability to function in a workplace.")

Lending support to the existence of severe cervical spine-related impairments, Plaintiff testified her pain prevented her from sitting or standing for long periods of time and made bending difficult. *See* AR 75–76; *see also* 20 C.F.R. §§ 404.1529(c)(4), 404.1529(d)(1) (symptom testimony considered at step two); SSR 16-3p ("At [Step Two], we will consider an individual's symptoms and functional limitations . . . unless the objective medical evidence alone" is sufficient for a favorable step-two determination.).

Generally, an ALJ undertakes a two-step process in considering subjective symptom testimony. First, he determines if there is objective medical evidence of an underlying impairment that could reasonably be expected to produce some degree of the alleged symptoms. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014). If there is, he can reject the claimant's symptom testimony by offering specific, clear, and convincing reasons. *See Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999).

The ALJ erroneously rejected Plaintiff's testimony at the first step with little explanation. *See* AR 26. At the first step, the relationship between the impairment and the alleged symptoms

need only "be a reasonable inference, not a medically proven phenomenon." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996). At this step, the ALJ

> do[es] not consider whether the severity of an individual's alleged symptoms is supported by the objective medical evidence. For example, if an individual has a medically determinable impairment established by a knee x-ray showing mild degenerative changes and he or she alleges extreme pain that limits his or her ability to stand and walk, [the ALJ] will find that individual has a medically determinable impairment that could reasonably be expected to produce the symptom of pain.

SSR 16-3p; *see also* 20 C.F.R. § 404.1529(b).

Similar to the example referenced in SSR 16-3p, here, the ALJ found that objective evidence revealed cervical spine-related MDIs that might cause some pain. AR 24. Further, objective medical evidence revealed potential pain-related abnormalities: impaired curvature, levoscoliosis, and type 1 Modic changes. *See* AR 26–27. Although some of these results were mild ones, the SSR 16-3p example shows this is not fatal. The ALJ provided no basis for finding the medical evidence could not reasonably be expected to cause any pain-related symptoms.

The ALJ also asserted, without further explanation, that Plaintiff's symptom testimony was inconsistent with the objective evidence but provided no further explanation for this assertion. *See* AR 26–27. This is not a clear and convincing reason for rejecting Plaintiff's testimony. *See Ferguson v. O'Malley*, 95 F.4th 1194, 1200 (9th Cir. 2024) ("[T]o satisfy the substantial evidence standard, the ALJ must . . . explain why the medical evidence is *inconsistent* with the claimant's subjective symptom testimony.") (emphasis in original). Moreover, "not all inconsistencies are 'sufficient to doom a claim as groundless under the de minimis standard of step two.'" *Glanden*, 86 F.4th at 846 (quoting *Webb*, 433 F.3d at 688).

Defendant argues the ALJ's step two finding must be upheld because no medical source opined Plaintiff had any limitations that would last more than 12 months. *See* Dkt. 11 at 5–6. But, as discussed, an unfavorable step two severity finding is appropriate only when the medical

ORDER RE: SOCIAL SECURITY DISABILITY
APPEAL - 5

evidence clearly establishes the lack of a severe impairment. *See Glanden*, 86 F.4th at 844. The absence of a favorable medical opinion for Plaintiff does not do so. "An inconclusive medical record precludes denial at this step." *Id.*

In sum, the ALJ erroneously found Plaintiff's cervical spine-related impairments were non-severe. Because the ALJ did not proceed beyond step two of the sequential evaluation process, this error was not harmless and requires reversal.

**B.     Duty to Develop Record**

The ALJ "has an independent duty to fully and fairly develop the record," *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (cleaned up), which "is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence," *Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020) (quoting *Mayes v. Massanari*, 276 F.3d 453, 459–60 (9th Cir. 2001)).

When the record or the hearing "suggests a likelihood" that it is missing further probative evidence, "the ALJ has a duty to inquire." *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011). When a claimant is represented (as Plaintiff was here), the ALJ still has a duty to inquire about such evidence but does not have a "duty to be especially diligent" in making that inquiry and satisfies his duty when the record is "adequate" to allow the ALJ to properly evaluate the claim. *See Chaudhry v. Astrue*, 688 F.3d 661, 669–70 (9th Cir. 2012). However, the duty to develop the record cannot shift the burden of proving disability onto the ALJ, *see Mayes*, 276 F.3d at 460, and the Court generally cannot impose procedural requirements beyond those reflected in the Commissioner's regulations and the relevant statutes, *see Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*, 435 U.S. 519, 524, 541–48 (1978).

Under the Commissioner's regulations and the relevant statutes, the claimant and the Commissioner share responsibility in assembling the medical evidence. The claimant must submit evidence as the Commissioner "may require." *See* 42 U.S.C. § 423(d)(5)(A). The Commissioner requires the claimant "inform [the Commissioner] about or submit all evidence known to [her] that relates to whether or not [she is] blind or disabled," 20 C.F.R. § 404.1512(a)(1), and the Commissioner must "make every reasonable effort to help [the claimant] get medical evidence from [her] medical sources and entities that maintain [her] medical sources' evidence," 20 C.F.R. § 404.1512(b)(1); *see also* 42 U.S.C. § 423(d)(5)(B). Similarly, the Commissioner must develop "the records of [a claimant's] medical source(s) covering at least the 12 months preceding" her application date, 20 C.F.R. § 404.1512(b)(1)(ii); *see also* 42 U.S.C. § 423(d)(5)(B), but the claimant has a duty to inform the Commissioner of who her medical sources are upon request, *see* 20 C.F.R. § 404.1512(a)(1).[3]

Plaintiff argues the ALJ failed to sufficiently develop the record because the record (1) lacked records from Madigan Army Center from 2023, (2) contained purportedly incomplete records from Madigan Army Center from before that date, and (3) did not include examinations administered to her by the Department of Veterans Affairs in connection with her claim for Veterans disability benefits. *See* Dkt. 9 at 3–7.

Plaintiff did inform the ALJ that the record lacked evidence from Madigan from after November 29, 2022, the date the most recent exhibit from Madigan was created. *See* AR 306, 321, 2550; *see also* AR 40 (ALJ acknowledging outstanding records). The record contains no

---

[3] When a claimant is represented, her attorney has some additional duties related to the development of the record. *See* 20 C.F.R. § 404.1740(a)(1)–(2). However, the failure to adhere to those duties does not relieve the Commissioner from any of its own duties to develop the record. *See* SSR 17-4p (violation of attorney's duties to assist in developing evidence "does not change [the Commissioner's] duties with respect to the development of the evidence").

ORDER RE: SOCIAL SECURITY DISABILITY APPEAL - 7

evidence the Commissioner attempted to request this evidence, despite the Commissioner's policy of exhibiting such efforts. *See* POMS – Hearings and Appeals § 01260.056.

The Court does not find the record was adequate to evaluate Plaintiff's claim without that evidence. The lacking Madigan evidence was probative, as Plaintiff had indicated she continued to receive treatment from Madigan and had been prescribed further medication during the relevant period in the course of being treated at Madigan. *See* AR 324, 326. And, as discussed, a step two denial is inappropriate unless the record conclusively establishes no more than a minimal limitation on Plaintiff's work-related abilities. *See Glanden*, 86 F.4th at 846. A modicum of additional treatment notes could cast decisive doubt upon a step two denial.

However, Plaintiff's remaining arguments are unavailing. Plaintiff argues the record was inadequate because some of the evidence from Madigan (AR 1076–2146) was in the form of extracted records, rather than complete treatment notes. Dkt. 9 at 3–4. Although the extracted records were less detailed than the treatment notes, they contained much of the information from the treatment notes, including providers' Assessment and Plan sections.[4] Plaintiff has not shown the extracts were so deficient that they were missing probative evidence triggering the ALJ's duty to inquire further.[5] And Plaintiff did not inform the ALJ that the record was missing

---

[4] One exhibit from Madigan contains both a set of 46 treatment notes from October 2020 through December 2021 (AR 718–938) along with extracts of some of those treatment notes (AR 331–718), with other exhibits including some extracts from those notes as well. The other exhibits from Madigan, however, included only the extracts; they did not include the full treatment notes as the first had. *See* AR 1076–2146. The extracts included a summary of the apparently-prefilled information included in most treatment notes (*e.g.*, a list of all the problems identified at appointments, AR 333–35, procedures done, AR 336, lab results, AR 337–89, vitals, AR 411–14, medications, AR 415–24, and changes to Plaintiff's social history, AR 424), along with extracts from the Assessment and Plan sections of the treatment notes (AR 425–75). The extracts also include some summary-level information from examinations (*see, e.g.*, AR 480).

[5] None of the examples of discrepancies between the treatment notes and the extracts identified by Plaintiff demonstrate the record was inadequate. Plaintiff points to a treatment note from June 2021 in which she rated her pain at a seven out of ten (Dkt. 9 at 4, citing AR 761), but that same rating at the same appointment does appear in the extracts, albeit within a different exhibit (*see* AR 2318). Plaintiff points to a treatment note from October 2021 indicating in the HPI that Plaintiff's sarcoidosis was with joint involvement (Dkt. 9 at 4, citing AR 737), but this same result is reflected throughout the medical evidence (*see e.g.*, AR 427), and the ALJ acknowledged the same in

ORDER RE: SOCIAL SECURITY DISABILITY
APPEAL - 8

1   evidence from Madigan from before November 2022, so finding the ALJ was required to seek

2   such evidence would improperly shift Plaintiff's burden of informing the ALJ about all relevant

3   evidence onto the ALJ. *See Mayes*, 276 F.3d at 460; 20 C.F.R. § 404.1512(a)(1).

4        Similarly, Plaintiff did not inform the ALJ that her VA examinations, described in her

5   VA disability decision (AR 216), were missing from the record, nor did the ALJ have reason to

6   seek such examinations without such notice. The ALJ is only required to consider supporting

7   evidence related to a VA disability determination if it was "receive[d] as evidence," 20 C.F.R. §

8   404.1504, but there is no independent duty to seek out such evidence without any request by

9   Plaintiff. Unlike the situation where a medical source indicates in a medical opinion that the ALJ

10  is required to address that there is further evidence in the claim, *see Dervin v. Astrue*, 407 F.

11  App'x 154, 156 (9th Cir. 2010) (unpublished), the underlying VA determination was not

12  evidence the ALJ was required to address, *see* 20 C.F.R. §§ 404.1520b(c)(1), 404.1504, so the

13  ALJ was also not required to seek examinations underlying that determination.

14       In sum, the Commissioner failed to sufficiently develop the record by failing to request

15  and exhibit evidence from Madigan Army Medical Center from after November 29, 2022.[6] The

16  Commissioner should do so on remand.

17       //

18       //

19       //

20

---

21  his summary of the medical evidence (*see* AR 26). Finally, Plaintiff points to a statement in an extract-only exhibit that her joints showed "chronic degenerative changes" (AR 2642), but that same appointment indicated Plaintiff's

22  sarcoidosis was inactive (*see* AR 2642), and the record elsewhere revealed that Plaintiff's right ankle was the source of difficulty (*see, e.g.*, AR 1210, 2341).

23  [6] Plaintiff also notes that the ALJ did not review the entirety of the record prior to the hearing (*see* Dkt. 9 at 3, citing AR 43, 77). This does not establish error. There is no requirement that an ALJ review the medical evidence at a

24  particular time, nor does the duty to develop the record create such a requirement.

## IV. CONCLUSION

For the foregoing reasons, the Court **REVERSES** and **REMANDS** the decision pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this Order.

Dated this 7th day of August, 2025.

David W. Christel
United States Magistrate Judge